**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH KAUFMAN, individually and on behalf of all others similarly situated, | ) ) ) | CASE NO. 5:22-cv-2126 |
| | ) | HON. JOHN R ADAMS |
| | ) | |
| Plaintiffs, | ) | PLAINTIFFS' PRE-DISCOVERY |
| vs. | ) | MOTION FOR CONDITIONAL |
| | ) | CERTIFICATION AND COURT- |
| GARDNER PIE COMPANY, | ) | AUTHORIZED NOTICE TO |
| | ) | POTENTIAL OPT-IN PLAINTIFFS |
| Defendant. | ) | PURSUANT TO 29 U.S.C. § 216(b) |
| | ) | |

_____/

**PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL COLLECTIVE**
**CERTIFICATION AND COURT-AUTHORIZED NOTICE TO POTENTIAL OPT-IN**
**PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b)**

Plaintiff Elizabeth Kaufman and opt-in plaintiffs Curtiss Dixon, Brian Pressley, and Darla Lilly ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals, respectfully move, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for entry of an order:

(1)     Conditionally certifying the proposed collective FLSA class;

(2)     Requiring Gardner Pie Company to identify all FLSA Collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order;

(3)     Authorizing Plaintiffs' Proposed form of Notice (**Exhibits A** & **B**) and implementing a procedure whereby Court-approved Notice of Plaintiffs' FLSA claims is sent (via U.S. Mail, e-mail and text message) to:

> *All current and former hourly employees who worked for Gardner Pie Company during the last three years* (the "FLSA Collective"); and

(4)     Appointing the undersigned as counsel for the FLSA Collective; and

(3)     Giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-authorized Notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

The facts and legal authorities in support of this Motion are in the attached Memorandum of Law in Support, which is hereby incorporated by reference.

Dated: January 24, 2023                    Respectfully submitted,

                                           */s/ Matthew L. Turner*
                                           Matthew L. Turner
                                           Jesse L. Young (pro hac vice)
                                           Albert J. Asciutto (pro hac vice)
                                           Sommers Schwartz, P.C.
                                           One Towne Square, Suite 1700
                                           Southfield, Michigan 48076
                                           Tel: (248) 355-0300
                                           mturner@sommerspc.com
                                           jyoung@sommerspc.com
                                           aasciutto@sommerspc.com

                                           *Counsel for Plaintiffs and the*
                                           *Proposed Collective and Class*


**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

                                           */s/ Matthew L. Turner*
                                           Matthew L. Turner
                                           Sommers Schwartz, P.C
                                           One Towne Square, Suite 1700
                                           Southfield, Michigan 48076
                                           Tel: (248) 355-0300
                                           mturner@sommerspc.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH KAUFMAN, individually and on behalf of all others similarly situated, | ) ) ) | CASE NO. 5:22-cv-2126 |
| | ) | HON. JOHN R ADAMS |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF LAW IN |
| vs. | ) | SUPPORT OF PLAINTIFFS' PRE- |
| | ) | DISCOVERY MOTION FOR |
| GARDNER PIE COMPANY, | ) | CONDITIONAL CERTIFICATION |
| | ) | AND COURT-AUTHORIZED NOTICE |
| Defendant. | ) | TO POTENTIAL OPT-IN PLAINTIFFS |
| | ) | PURSUANT TO 29 U.S.C. § 216(b) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PRE-DISCOVERY**
**MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND**
**COURT-AUTHORIZED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS**
**PURSUANT TO 29 U.S.C. § 216(b)**

## <u>TABLE OF CONTENTS</u>

Index of Authorities .................................................................................................ii

I.     Introduction .................................................................................................1

II.    Relevant Facts ...........................................................................................2

     A. The Parties ...........................................................................................2

          1. Defendant ........................................................................................2

          2. Plaintiffs ..........................................................................................2

     B. Plaintiffs' FLSA Claims ........................................................................2

          1. Defendant Failed to Calculate the Plaintiffs' Proper Regular Rates
             and Overtime Rates .......................................................................3

III.    Law and Argument ....................................................................................5

     A. The FLSA Authorizes Collecrive Actions and Notice to Similarly
        Situated Employees .............................................................................5

     B. The Sixth Circuit Applies a Lenient Standard When Conditionally
        Certifying a FLSA Collective Action ...................................................6

          1. The Notice Stage .............................................................................6

          2. Evidence Typically Accepted to Meet the "Similarly Situated" Test ....................7

          3. A Primary Purpose of Notice is to Protect Employees' Statutes of
             Limitations .....................................................................................8

          4. At the Notice Stage, Courts do not Consider the Merits or Individual
             Defenses ........................................................................................9

          5. The Decertification Stage ...............................................................10

     C. Plaintiffs Meet the Standard for Conditional Certification ....................11

     D. Plaintiffs are Entitled to a List of FLSA Collective Members ...............12

     E. Notice Should be Sent by U.S. Mail, Email, and Text Message .............12

IV.    Conclusion ..............................................................................................15

## <u>INDEX OF AUTHORITIES</u>

Page(s)

Cases

*Andrews v. Producers Serv. Corp.*, 2:19-CV-2514,
   2020 WL 4434865 (S.D. Ohio Aug. 3, 2020) ...................................... 13

*Atkinson v. TeleTech Holdings, Inc.,*
   2015 U.S. Dist. LEXIS 23630, *11-12 (S.D. Ohio Feb. 26, 2015) ........................................ 11

*Beattie v. TTEC Healthcare Solutions, Inc.,*
   2019 WL 2866559 (D. Colo. July 3, 2019) ...................................... 13

*Braunstein v. E. Photographic Laboratories, Inc.,*
   600 F.2d 335 (2d Cir. 1978) .......................................................... 5

*Buttry v. Dollar Gen. Corp.*, 13-cv-0652,
   2014 WL 12788996 (M.D. Tenn. Jan. 10, 2014) ...................................... 8

*Calvillo v. Bull Rogers, Inc.,*
   267 F. Supp. 3d 1307 (D. N.M. 2017).......................................... 13

*Casarez v. Producers Serv. Corp.,*
   2020 U.S. Dist. LEXIS 68659, at *12 (S.D. Ohio Jan. 28, 2020) ...................................... 3

*Comer v. Wal-Mart Stores, Inc.,*
   454 F.3d 544 (6th Cir. 2006) .......................................... 6, 7, 9

*Creely v. HCR ManorCare, Inc.,*
   920 F. Supp. 2d 846 (N.D. Ohio 2013) .......................................... 6, 7

*Crosby v. Stage Stores, Inc.,*
   348 F. Supp. 3d 742 (M.D. Tenn. 2018) ...................................... 7

*Dickensheets v. Arc Marine, LLC,*
   440 F. Supp. 3d 670 (S.D. Tex. 2020)...................................... 13

*Douglas v. GE Energy Reuter Stokes*, 07-cv-077,
   2007 WL 1341779 (N.D. Ohio Apr. 30, 2007) ...................................... 8

*Evans v. Caregivers, Inc.*, 3:17-CV-0402,
   2017 WL 2212977 (M.D. Tenn. May 19, 2017) ...................................... 12

*Fisher v. Michigan Bell Tel. Co.,*
   665 F. Supp. 2d 819 (E.D. Mich. 2009) .......................................... 6, 11

*Hoffmann-La Roche, Inc. v. Sperling,*
   493 U.S. 165 (1989) .......................................... 5, 6, 7, 11

*Irvine v. Destination Wild Dunes Mgmt.,*
   132 F. Supp. 3d 707 (D. S.C. 2015) ...................................... 13

*Jones v. JGC Dallas LLC,*
   2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) ...................................... 11

*Lacy v. Reddy Elec. Co.*, 3:11-cv-52,
   2011 WL 6149842 (S.D. Ohio Dec. 9, 2011)...................................... 9

*Lewis v. Huntington Nat. Bank,*
   789 F. Supp. 2d 863 (S.D. Ohio 2011) ...................................... 6

*Lowe's Companies, Inc.*, 04-cv-774,
   2005 WL 6742234 (S.D. Ohio May 11, 2005)...................................... 8

*Morisky v. Pub. Serv. Elec. & Gas Co.,*
   111 F. Supp. 2d 493 (D. N.J. 2000)...................................... 9

*O'Brien v. Ed Donnelly Enterprises, Inc.*,
  575 F.3d 567 (6th Cir. 2009) .......................................................... 6, 9, 10
*Olivo v. GMAC Mortg. Corp.*,
  374 F. Supp. 2d 545 (E.D. Mich. 2004) ................................................ 7
*Perez v. A+ Bldg. Maint. and Home Repair, LLC*, 17-cv-01261,
  2018 WL 2002420 (N.D. Ohio Apr. 30, 2018) .................................... 10
*Pogue v. Chisholm Energy Operating, LLC*,
  2021 WL 5861184 (D. N.M. Dec. 10, 2021).......................................... 13
*Roberts v. J.R. Engr., Inc*., 19-cv-00110,
  2019 WL 5653340 ................................................................................ 10
*Shipes v. Amurcon Corp.*,
  2012 WL 995362 (E.D. Mich. Mar. 23, 2012) ................................. 7, 14
*Sperling v. Hoffmann-LaRoche, Inc.*,
  118 F.R.D. 392 (D.N.J. 1988) ............................................................ 7, 8
*Torres v. Vitale*,
  2020 U.S. Dist. LEXIS 204594, *17 (W.D. Mich. Sept. 30, 2020) ....... 12
*Waggoner v. U.S. Bancorp*,
  110 F. Supp. 3d 759 (N.D. Ohio 2015) ................................................ 7
*Westley v. CCK Pizza Co., LLC*,
  2019 U.S. Dist. LEXIS 93015 at *16 (E.D. Mich. June 4, 2019) .......... 11
*White v. MPW Indus. Servs., Inc.*,
  236 F.R.D. 363 (E.D. Tenn. 2006) ....................................................... 7
*Wilson v. Maxim Healthcare Servs.*,
  2014 U.S. Dist. LEXIS 177072, at *21 (W.D. Wash. Dec. 22, 2014) ...... 12
*Wlotkowski v. Michigan Bell Tel. Co.*,
  267 F.R.D. 213 (E.D. Mich. 2010).................................................... 8, 9
*Young v. Chieftain Coating, et al*,
  2022 WL 3020135 (E.D. Mich. July 29, 2022) ................................... 12

Statutes

29 U.S.C. § 207 ......................................................................................... 1, 5
29 U.S.C. § 216(b) ................................................................................. 1, 5, 14
29 U.S.C. § 255(a) ......................................................................................... 8

Regulations

29 C.F.R. 778.211(c)........................................................................................ 3

# I.  <u>INTRODUCTION</u>

Plaintiff Elizabeth Kaufman and opt-in plaintiffs Curtiss Dixon, Brian Pressley, and Darla Lilly ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals, respectfully request that the Court, pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), enter an order:

(1)    Conditionally certifying the proposed collective FLSA class;

(2)    Requiring Gardner Pie Company to identify all FLSA Collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order;

(3)    Authorizing Plaintiffs' Proposed form of Notice (**Exhibits A** & **B**) and implementing a procedure whereby Court-approved Notice of Plaintiffs' FLSA claims is sent (via U.S. Mail, e-mail and text message) to:

> *All current and former hourly employees who worked for Gardner Pie Company during the last three years* (the "FLSA Collective"); and

(4)    Appointing the undersigned as counsel for the FLSA Collective; and

(5)    Giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-authorized Notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

The Court should grant Plaintiffs' requested relief because:

(1)    Plaintiffs and the putative class members are similarly situated as Defendant failed to incorporate non-discretionary bonuses and shift premiums in calculating hourly employees' "regular rate" for purposes of determining their overtime rates;[1]

(2)    The Sixth Circuit applies a lenient standard for conditional FLSA certification that typically results in the conditional certification of a representative class; and

---

[1] While a portion of Plaintiffs' allegations are predicated upon unpaid donning and doffing time, these allegations are contested by the Defendant.  Defendant's violations of the FLSA's overtime provisions, 29 U.S.C. § 207, by systematically failing to include all remuneration in Plaintiffs' regular rates of pay when computing overtime pay, specifically, nondiscretionary incentive compensation, is widespread, irrefutable by the record, and sufficient by itself to warrant conditional certification of the FLSA Collective.

(3)     Without the requested Court-approved Notice, many putative plaintiffs will never learn about this case and their right to participate; as a result, their viable claims will expire due to the FLSA's statute of limitations.

## II.     RELEVANT FACTS

### A.     THE PARTIES

#### 1.     Defendant

Defendant Gardner Pie Company ("Defendant") manufactures frozen, unbaked pies for the in-store bakery market, producing bakery items for sale in commercial and retail sectors from its manufacturing plant in Akron, Ohio. (Plaintiff's Complaint ("Compl."), ECF. No. 1, ¶ 2; **Ex. C**, Gardner Pie Company Employee Handbook, p. 6). Defendant distributes its baked goods for sale across the United States and internationally. (*Id.*). To facilitate its business operations, Defendant employs Plaintiffs and others who are similarly situated as hourly employees. (Compl. at ¶¶ 6-7).

#### 2.     Plaintiffs

Plaintiff Elizabeth Kaufman and opt-in plaintiffs Curtiss Dixon, Brian Pressley, and Darla Lilly are Ohio residents who previously worked for, or currently work for, Defendant as hourly employees at Defendant's Akron, Ohio manufacturing facility. (Compl. ¶ 26; **Exs. D – G**; Declarations of Elizabeth Kaufman, Curtiss Dixon, Brian Pressley, and Darla Lilly, ("Pls.' Decls."), ¶¶ 1). Defendant paid Plaintiffs an hourly wage, plus shift premium pay, incentive compensation based on production performance, and incentive compensation in the form of attendance bonuses. (**Exs. D – G, ¶¶** 2-3; **Ex. H** – Plaintiff Kaufman's Earnings Statements; **Ex. I** – Plaintiff Dixon's Earnings Statements). Plaintiffs worked overtime for Defendant during numerous workweeks. (Compl. ¶ 26; **Exs. D – G**. ¶¶ 2, 6; **Ex. H**; **Ex. I**).

### B.     PLAINTIFFS' FLSA CLAIMS

Plaintiffs allege two distinct violations of the FLSA: (1) that Defendant failed to incorporate non-discretionary attendance bonuses, production bonuses, and shift premiums in

calculating Plaintiffs' "regular rate" for purposes of determining their overtime rates; and (2) that Defendant knowingly suffered or permitted Plaintiffs to perform unpaid work before, during, and after their scheduled shifts. For the purposes of conditional certification, Plaintiffs' need only demonstrate that Defendant improperly calculated Plaintiffs' regular rates and overtime rates.

1.      **Defendant Failed to Calculate the Plaintiffs' Proper Regular Rates and Overtime Rates**

In addition to a base hourly rate, Defendant paid its hourly workers non-discretionary bonuses in the form of attendance bonuses, production bonuses, and shift premiums. (Compl. at ¶¶ 26, 74; *see also* **Ex. D**, Kaufman Decl. at ¶¶ 3-4; **Ex. E**, Dixon Decl. at ¶¶ 3-4; **Ex. F**, Pressley Decl. at ¶¶ 3-4; **Ex. G**, Lilly Decl. at ¶¶ 3-4; **Ex. H**, Kaufman's Earnings Statements; **Ex. I**, Dixon's Earnings Statements).

Plaintiffs contend that Defendant's failure to include non-discretionary bonuses in the regular rate calculation violates the FLSA, which provides that non-discretionary bonus compensation must be factored into an employee's regular rate, which is then multiplied by 1.5 times to obtain the overtime rate. *See* 29 C.F.R. 778.211(c) ("Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work … must be included in the regular rate of pay") (emphasis added); *see also Casarez v. Producers Serv. Corp.*, 2020 U.S. Dist. LEXIS 68659, at *12 (S.D. Ohio Jan. 28, 2020) (noting that for a bonus to be excludable "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer... and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly").

Defendant implemented written policies for its attendance and production bonuses and its shift premiums whereby it promised all of its hourly employees these payments over and above their base hourly rates.  (**Ex. D**, Kaufman Decl. at ¶ 3; **Ex. E**, Dixon Decl. at ¶ 3; **Ex. F**, Pressley

Decl. at ¶ 3; **Ex. G**, Lilly Decl. at ¶ 3).  The following attendance bonus structure was promised to employees: hourly employees with perfect attendance in a given week would receive an additional $25 dollars, and those with perfect attendance each week thereafter would then have their bonus "roll-over" to the next week, adding $25 to the bonus amount each week that the employee maintained perfect attendance.  (*Id.*; *see also* **Ex. I**, Dixon's Earnings Statements). The attendance bonus program was active during the statutory timeframe applicable to the Collective. (*See generally*, Pls.' Decls. at **Exs. D-G**).

Likewise, Defendant also promised hourly employees shift premiums for working certain shifts, such as an extra $1 per hour for working on the weekend. (**Ex. D**, Kaufman Decl. at ¶ 3; **Ex. E**, Dixon Decl. at ¶ 3; **Ex. F**, Pressley Decl. at ¶ 3; **Ex. G**, Lilly Decl. at ¶ 3; **Ex. I**, Dixon's Earnings Statements).  The shift premium program was active during the timeframe encompassed by the Collective. (*See generally*, Pls.' Decls. at **Exs. D-G**).

Most, if not all, of Defendant's hourly employees received payments under these written policies. (**Ex. D**, Kaufman Decl. at ¶ 4; **Ex. E**, Dixon Decl. at ¶ 4; **Ex. F**, Pressley Decl. at ¶ 4; **Ex. G**, Lilly Decl. at ¶ 4; **Ex. H**, Kaufman's Earnings Statements; **Ex. I**, Dixon's Earnings Statements). However, Defendant failed to include these bonuses and shift premium pay in calculating Plaintiffs' regular rate and overtime pay rates. (Compl. at ¶ 76; *see also* **Ex. D**, Kaufman Decl. at ¶ 5; **Ex. E**, Dixon Decl. at ¶ 5; **Ex. F**, Pressley Decl. at ¶ 5; **Ex. G**, Lilly Decl. at ¶ 5; **Ex. H**, Kaufman's Earnings Statements; **Ex. I**, Dixon's Earnings Statements).  Defendant's regular rate violations are plainly apparent on review of the Plaintiffs' paystubs. (*See e.g.*, **Ex. H**, Kaufman's Earnings Statements; **Ex. I**, Dixon's Earnings Statements) (showing that incentive and production bonuses, attendance bonuses, and shift premiums were not calculated into Plaintiff Kaufman's or Dixon's overtime rate).

### III.    LAW AND ARGUMENT

**A.    THE FLSA AUTHORIZES COLLECTIVE ACTIONS AND NOTICE TO SIMILARLY SITUATED EMPLOYEES**

The FLSA requires employers to pay employees specified hourly rates for up to 40 hours per week, and pay overtime compensation at one and one-half times the regular rate for hours worked in excess of 40 hours in a week. 29 U.S.C. § 207. To enforce this provision, an aggrieved employee may bring a collective action on her own behalf, and on behalf of those who are similarly situated and who opt in by giving consent in writing to become a party. 29 U.S.C. § 216(b).

The FLSA is silent on how notification should be given to similarly situated persons in § 216(b) collective actions. *Braunstein v. E. Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) was the most notable early Circuit Court decision approving a district court order authorizing notice to similarly situated persons in a § 216(b) lawsuit. *Braunstein* was endorsed by *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989), holding that courts have the discretion to implement the collective action procedure by facilitating notice to potential class members. Commenting favorably upon collective actions, the Court noted:

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id*. at 170 (interpreting the Age Discrimination in Employment Act (ADEA), which explicitly incorporates the collective action provisions of the FLSA).

The lack of class-wide tolling of the FLSA's statute of limitations should compel the Court to authorize notice to similarly situated persons of their "opt in" rights at the earliest stage of the litigation. When plaintiffs move for conditional certification, "[t]ime is of the essence because 'the commencement of a collective action under § 216(b) does not toll the statute of limitations period

for plaintiffs who have failed to opt-in.'" *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (citation and footnote omitted). "Thus, judicial notice protects these claims by informing similarly situated employees of the facts needed to make an informed decision whether to opt-in." *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 829 (E.D. Mich. 2009) (citing *Hoffmann-La Roche,* 493 U.S. at 170).

**B.**     **THE SIXTH CIRCUIT APPLIES A LENIENT STANDARD WHEN CONDITIONALLY CERTIFYING A FLSA COLLECTIVE ACTION**

When plaintiffs seek conditional certification under the FLSA, "courts in the Sixth Circuit follow a two-stage certification process to determine whether a proposed group of plaintiffs is 'similarly situated.'" *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 850 (N.D. Ohio 2013).

### 1.     The Notice Stage

The first stage, known as the "notice stage," occurs "at the beginning of discovery with a focus on determining whether there are plausible grounds for plaintiffs' claims." *Id*. "True first stage review is 'fairly lenient,' requiring only that plaintiffs show a colorable basis for their claim that a class of similarly situated plaintiffs exists." *Id*. at 851 (citations omitted). For a collective action to be conditionally certified, "[t]he plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006) (citations omitted). Plaintiffs are similarly situated if "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). Factors that guide the court's consideration of conditional certification at this stage include: (1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; and, (3) whether there is evidence of a "widespread" discriminatory plan affecting those plaintiffs, which was maintained by defendants.

*Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (citations omitted).

Once a court conditionally certifies an action, it approves notice to putative plaintiffs. *Creely*, 920 F. Supp. 2d at 850. The benefits of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche,* 493 U.S. at 170.

### 2.    <u>Evidence Typically Accepted to Meet the "Similarly Situated" Test</u>

"Where, as here, the request [for conditional certification] is made early in the case and prior to significant discovery, the standard is 'fairly lenient,' and requires only 'a modest factual showing' that 'typically results in conditional certification of a representative class.'" *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 746 (M.D. Tenn. 2018) (quoting *Comer*, 454 F.3d at 547). To meet this burden, substantial allegations supported by declarations are "all that is required." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006). "[A]t this stage courts typically conditionally certify a representative class because the court has only minimal evidence before it—the pleadings and affidavits submitted by the parties." *Shipes v. Amurcon Corp.*, No. 10-cv-14943, 2012 WL 995362, at *3 (E.D. Mich. Mar. 23, 2012) (citations omitted).

### 3.    <u>A Primary Purpose of Notice is to Protect Employees' Statutes of Limitations</u>

At the notice stage, courts make an initial determination of whether *potential* similarly situated individuals exist. *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 547-48 (E.D. Mich. 2004). As stated in *Sperling v. Hoffmann-LaRoche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988):

> [N]otice to absent class members need not await a conclusive finding of similar situations. To impose such a requirement would condemn any large class claim … to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves.

The court held that sending notice prior to a final decision on the similarly situated element assures

that the decision made after absent class members opt-in will be "informed, efficiently reached, and conclusive." *Id*.

Further, the FLSA's statute of limitations is two years, extended to three years for a willful violation. 29 U.S.C. § 255(a). "It stands to reason, therefore, that notice should be sent to prospective plaintiffs early in the litigation so that they may file consent forms and opt-in to the collective action as soon as practicably possible." *Buttry v. Dollar Gen. Corp.*, 13-cv-0652, 2014 WL 12788996, at \*3 (M.D. Tenn. Jan. 10, 2014). If notice is delayed, numerous FLSA violations will persist without redress due to nothing more than the passage of time. Indeed, employers could eliminate all FLSA exposure simply by running out the clock. Conversely, employees who lack meritorious claims or who are not "similarly situated" to the named plaintiffs receive no structural advantage from early notice. These employees must still prove their case on the merits and withstand a stage-two decertification analysis. *See Douglas v. GE Energy Reuter Stokes*, 07-cv-077, 2007 WL 1341779 at \*4 (N.D. Ohio Apr. 30, 2007) ("If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice"). Courts recognize the great prejudice that befalls employees if notice is delayed. *See Smith v. Lowe's Companies, Inc.*, 04-cv-774, 2005 WL 6742234, at \*4 (S.D. Ohio May 11, 2005) (Because the statute of limitations continues to run against each potential class member until he or she formally elects to join the collective action, "the plaintiff's burden of establishing that he is similarly situated to potential opt-in class members is extremely light") (citations omitted). In sum, the only plausible purpose for delaying notice is to foreclose the vindication of valid FLSA claims.

### 4. At the Notice Stage, Courts do not Consider the Merits or Individual Defenses

At the notice stage, the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010) (citations and quotations omitted). "It is not the role

of the Court at this [notice] stage of the proceedings to decide the case on the merits. To do so at [this] juncture, when Plaintiffs have conducted little or no discovery, would be unfair." *Lacy v. Reddy Elec. Co.*, 3:11-cv-52, 2011 WL 6149842, at *3 (S.D. Ohio Dec. 9, 2011).

Likewise, allegations that the parties' claims or defenses are too individualized do not preclude conditional certification; instead, "arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review." *Wlotkowski,* 267 F.R.D. at 219. Indeed, conditional certification is appropriate, even absent a unified policy of violations, where potential plaintiffs' claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F. 3d at 585. For example, in *O'Brien*, the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." *Id*. at 585.

### 5. The Decertification Stage

The second stage, or decertification stage, occurs "after all of the opt-in forms have been received and discovery has been concluded." *Wlotkowski,* 267 F.R.D. at 217. "At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated" because "the court has much more information on which to base its decision and, as a result, [it] employs a stricter standard." *Comer*, 454 F.3d at 546 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D. N.J. 2000)).

### C. PLAINTIFFS MEET THE STANDARD FOR CONDITIONAL CERTIFICATION

The core allegations in Plaintiffs' Complaint, coupled with the supporting declarations from numerous employees, in addition to the Earnings Statements, provides overwhelmingly

sufficient evidence that conditional certification is warranted, as Plaintiffs' have identified a common theory of Defendant's statutory violations. See *O'Brien*, 575 F.3d at 585. The substantial allegations in Plaintiffs' Complaint, supported by **Exhibits D – I**, demonstrate:

(1) Plaintiffs and all others similarly situated were employed by Defendant at its Akron, Ohio facility;

(2) Plaintiffs and all others similarly situated were paid an hourly rate;

(3) Plaintiffs and all others similarly situated were eligible for, and regularly received, routine and non-discretionary bonuses, as well as shift premium pay;

(4) Defendant failed to incorporate these shift premiums and bonuses payments into Plaintiffs', and all others similarly situated, regular rates that it used to calculate overtime rates;

(5) Plaintiffs and all others similarly situated regularly worked in excess of 40 hours a week and were paid overtime for some of those hours, but at a rate that did not include Defendant's production bonuses, attendance bonuses, or shift premium pay.

(Compl. at ¶¶ 74-77; *see also* **Ex. D**, Kaufman Decl. at ¶¶ 1-6; **Ex. E**, Dixon Decl. at ¶¶ 1-6; **Ex. F**, Pressley Decl. at ¶¶ 1-6; **Ex. G**, Lilly Decl. at ¶¶ 1-6; **Ex. H**, Kaufman's Earnings Statements; **Ex. I**, Dixon's Earnings Statements). These allegations, and supporting documentation, are sufficient to meet Plaintiffs' modest burden of showing that hourly employees at Defendant's Akron, Ohio facility share a common theory of an alleged regular rate violation, and are thus similarly situated. *See Roberts v. J.R. Engr., Inc*., 19-cv-00110, 2019 WL 5653340, at *7 (N.D. Ohio Oct. 31, 2019 (conditionally certifying donning and doffing class where "Plaintiffs have sufficiently identified a common theory of JRE's alleged statutory violation.").

### D.     PLAINTIFFS ARE ENTITLED TO A LIST OF FLSA COLLECTIVE MEMBERS

To facilitate timely notice, Plaintiffs request that the Court order Defendant, within ten days of the order conditionally certifying this action, to identify all FLSA Collective members by their full names, last known addresses, phone numbers, email addresses, and dates and location of employment. *See Perez v. A+ Bldg. Maint. and Home Repair, LLC*, 17-cv-01261, 2018 WL

2002420, at *8 (N.D. Ohio Apr. 30, 2018). The names, addresses, phone numbers, and email addresses of affected employees are plainly discoverable, and courts routinely order production of this information to effectuate the notice process. *Hoffmann-La Roche*, 493 U.S. at 170; *Westley v. CCK Pizza Co., LLC*, 2019 U.S. Dist. LEXIS 93015 at *16 (E.D. Mich. June 4, 2019) (ordering production of names, mailing and email addresses, and telephone numbers); *Fisher*, 665 F. Supp. 2d at 829 (requiring production of phone numbers to aid in skip tracing).

E.      **NOTICE SHOULD BE SENT BY U.S. MAIL, EMAIL, AND TEXT MESSAGE**

Obtaining the full benefits of the FLSA depends "on employees receiving accurate and *timely* notice concerning the pendency of the collective action." *Hoffmann-La Roche*, 493 U.S. at 170 (emphasis added).  As such, the goal of the FLSA, and in turn, court-ordered notice, should be to achieve the maximum number of potential opt-ins so as to vindicate the purpose of the Act. In an effort to achieve this goal, courts have approved the use of electronic signature opt-in forms available online to secure the maximum number of opt-ins. *See e.g.*, *Williams v. Sykes Enterprises, Inc., et al.*, No. 13-0946, Doc. 86, at 11 (D. Minn. Oct. 3, 2013) (finding that, "in this day and age, the potential class members should be *allowed to opt-in electronically*"); *Jones v. JGC Dallas LLC, et al.*, 2012 U.S. Dist. LEXIS 185042, at *27, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) ("potential plaintiffs should be given notice of the lawsuit and their right to opt in via first class mail *and e-mail*, and they should be given the option of executing their consent forms online via an electronic signature service") (emphasis added). These courts uniformly recognize that allowing prospective class members to receive notice via e-mail and opt-in to the case via electronic signature—particularly where the vast majority of the employees work with computers and e-mail on a daily basis—best effectuates the FLSA's remedial purpose.  For example, in a recent action, *Atkinson v. TeleTech Holdings, Inc.*, 2015 U.S. Dist. LEXIS 23630, *11-12 (S.D. Ohio Feb. 26,

2015), notice was sent to putative class members via e-mail, and in less than 24 hours, over 500 executed consent forms were received for filing (2.3% of the class). Similarly, in *Wilson v. Maxim Healthcare Servs.*, 2014 U.S. Dist. LEXIS 177072, at *21 (W.D. Wash. Dec. 22, 2014), notice was sent to putative class members via e-mail and, in less than 24 hours, 76 executed consent forms were received for filing (9.3% of the class).

Plaintiffs request that Notice be sent to FLSA Collective members via U.S. Mail, email, and text message. "[C]ourts within the Sixth Circuit have routinely approved dual notification through regular mail and email." *Evans v. Caregivers, Inc.*, 3:17-CV-0402, 2017 WL 2212977, at *7 (M.D. Tenn. May 19, 2017) (citing cases). A copy of Plaintiffs' proposed Notice is attached as **Exhibit A**. This same basic form of notice has been used by Plaintiffs' counsel in many other cases for over a decade. *See e.g.*, *Young v. Chieftain Coating, et al*, 2022 WL 3020135 (E.D. Mich. July 29, 2022); *Athan v. U.S. Steel Corp.*, No.: 17-cv-14220 (ECF No. 56-1) (E.D. Mich. April 29, 2019) (authorizing essentially the same notice to be issued to approximately 1,200 employees). The proposed Notice contains a concise and neutral definition of the proposed Collective and is intended to inform only Defendant's hourly, non-exempt employees of their right to join the case. The Notice also includes a succinct description of the nature of this lawsuit and makes clear that participation in the lawsuit is strictly optional and may require additional efforts, including potentially responding to discovery and appearing for trial. The Notice also identifies Plaintiffs' counsel and contains straightforward instructions on how to join and the legal impacts of doing so.

In addition, given the importance and urgency of providing notice to class members of a pending FLSA case, Plaintiffs seek an order permitting a shortened notice via text message (**Ex. B**) to any proposed Collective member for whom Defendant maintained a mobile number. Courts around the nation are becoming more inclined to do so. *See Torres v. Vitale*, 2020 U.S. Dist.

204594, *17 (W.D. Mich. Sept. 30, 2020) (granting conditional certification and approving notice via text message); *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580-KWR-KK, 2021 WL 5861184, at *9 (D. N.M. Dec. 10, 2021) (finding "that mail, email, and text message are appropriate methods to distribute the notice"); *Beattie v. TTEC Healthcare Solutions, Inc.*, 2019 WL 2866559, at *2 (D. Colo. July 3, 2019) (permitting plaintiffs to "provide notice by e-mail and text message as well as by regular mail"); *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D. N.M. 2017) ("Further discussion regarding whether notice by email and text should be allowed [is] pointless because the law is on Plaintiff's side. Courts have recognized that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved."); *Irvine v. Destination Wild Dunes Mgmt.*, 132 F. Supp. 3d 707, 711 (D. S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication."). As aptly put by the court in *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670 (S.D. Tex. 2020),

> The question for me in this case, therefore, is simple: Are potential plaintiffs more likely to receive notice of the lawsuit if Plaintiffs are permitted to deliver notice via text message in addition to email and mail? I think the answer to this question, without a doubt, is yes.

*Id*. at 672.

Finally, Plaintiffs request an opt-in period of sixty (60) days to give employees a reasonable opportunity to join the litigation and to permit skip tracing and re-mailing to any employees who may have relocated, with a reminder postcard and e-mail sent halfway through the notice period. *See Andrews v. Producers Serv. Corp.*, 2:19-CV-2514, 2020 WL 4434865, at *5 (S.D. Ohio Aug.

13

3, 2020) (permitting reminder postcard and e-mail). A sixty-day opt-in period is reasonable in this case and is far shorter than opt-in periods that have been approved in other cases.  *See e.g.*, *Shipes*, 2012 U.S. Dist. LEXIS 39794 at *35 (approving 90-day notice period).

## IV.   CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), enter an order:

(1)   Conditionally certifying the proposed collective FLSA class;

(2)   Requiring Gardner Pie Company to identify all FLSA Collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order;

(3)   Authorizing Plaintiffs' Proposed form of Notice (**Exhibits A** & **B**) and implementing a procedure whereby Court-approved Notice of Plaintiffs' FLSA claims is sent (via U.S. Mail, e-mail and text message) to:

> *All current and former hourly employees who worked for Gardner Pie Company during the last three years* (the "FLSA Collective"); and

(4)   Appointing the undersigned as counsel for the FLSA Collective; and

(5)   Giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-authorized Notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

Dated: January 24, 2023                     Respectfully submitted,

                                            */s/ Matthew L. Turner*
                                            Matthew L. Turner
                                            Jesse L. Young (pro hac vice)
                                            Albert J. Asciutto (pro hac vice)
                                            Sommers Schwartz, P.C.
                                            One Towne Square, Suite 1700
                                            Southfield, Michigan 48076
                                            Tel: (248) 355-0300
                                            mturner@sommerspc.com
                                            jyoung@sommerspc.com
                                            aasciutto@sommerspc.com

*Counsel for Plaintiffs and the*
*Proposed Collective and Class*
*Attorneys for Plaintiffs and the Putative*
*Collective/Class Members*

## CERTIFICATE OF SERVICE

I certify that on January 24, 2023, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew L. Turner*
Matthew L. Turner